[Civil No. 4708.   Filed July 9, 1945.]

[160 Pac. (2d) 757.]

AMERICAN SMELTING AND REFINING COMPANY, a Corporation, Appellant, v. SWISS-HELM GOLD SILVER COMPANY, a Corporation, Appellee.

Mr. Ben C. Hill, for Appellant.

Mr. Oliver J. Laubscher, and Mr. Paul M. Roca, for Appellee.

LaPRADE, J.—Appellee brought this action against appellant American Smelting and Refining Company to recover the sum of $1,904.27, the alleged value of four carloads of ore purchased by the smelting company at its El Paso plant from one Cyrus Farwell, who, the appellee alleged, had wrongfully removed the ore from its mining claims in Cochise County. The appellant in its answer set up numerous defenses. Among others, it alleged that the plaintiff below had received full payment for its ore from one Cyrus Farwell, and was estopped from making the claim as set forth by virtue of a certain judgment of the Superior Court of Cochise County. The pleadings in the case at bar and the rulings thereon are somewhat involved and confusing and our disposition of the case makes it unnecessary to recite them. The correct disposition to be made of the defense of payment and the effect of the Cochise County judgment will, in our opinion, dispose of this appeal.

The record of the Cochise County case discloses that Farwell was employed as watchman by Swisshelm upon nine unpatented mining claims in Cochise County. Farwell, after obtaining legal advice, determined that the Swisshelm claims were open for relocation because of the failure to perform the an-

nual assessment work, whereupon he attempted to relocate four of the claims. Subsequently, he shipped from these claims the four carloads of ore in question. Farwell then brought suit to quiet title to these four claims, naming as defendant Ben Heney, who was then or had been president of the Swisshelm Corporation. Swisshelm then intervened in this quiet-title action and filed an answer and cross-complaint. In its answer it denied that the plaintiff Farwell had discovered mineral in place; denied that said lands were open to mineral location and unoccupied. It alleged that it was the owner of the claims; that at the time of the pretended location by Farwell he was employed as watchman on the claims; that his employment was attributable to its assessment work; and, that as a consequence said mineral lands were not open to relocation. It further alleged that the attempted relocations by Farwell were wrongful and unlawful; that his possession as a pretended locator was unlawful; and, that he "did wrongfully and unlawfully remove from said premises a three-thousand-dollar compressor, hoist cable, tools, and other mining equipment" belonging to the cross-complainant. The prayer for relief was (1) for immediate possession, (2) that it be adjudged the lawful owner, and (3) for a restraining order, and for return of the machinery, tools, etc.

By way of answer and cross-complaint, plaintiff Farwell admitted that he had taken its compressor and was holding the same as security for payment of back wages which he claimed Swisshelm owed him. He denied the allegations with reference to taking any other property. In his counterclaim, he alleged that he had been employed by Swisshelm as caretaker, and "that said defendants Ben Heney and/or Swisshelm Gold Silver Company, a corporation, have paid plaintiff the sum of $6,445.50 and no more for his services; that there is now due and ow-

ing to the plaintiff Cyrus Farwell from the defendant Ben Heney and the intervener Swisshelm Gold Silver Mining Company, a corporation, the sum of $3,755.25, which is now due, owing, and unpaid.'' Judgment was prayed for in this last-named sum. By way of reply to this counterclaim, the intervener (Swisshelm) filed the following denial:

"Deny that the defendants Ben Heney and/or Swisshelm Gold Silver Mining Co., a corporation, have paid plaintiff the sum of $6,445 and no more for his services, and that there is now due and owing the plaintiff Cyrus Farwell from the defendant Ben Heney and the intervener Swisshelm Gold Silver Mining Company, a corporation, the sum of $3,755.25.''

It is to be observed that this attempted reply is a pure negative pregnant, and raised no issue. A negative pregnant is a denial pregnant with an admission of a substantial fact which is apparently controverted, or one which, though in form of a traverse, really admits the important fact contained in the allegation. *Electrical Accessories Co.* v. *Mittenthal,* 194 N. Y. 473, 87 N. E. 684, 685; *Tierney* v. *Dietsch,* 110 Neb. 462, 194 N. W. 475; *McIntosh Livestock Co.* v. *Buffington,* 108 Or. 358, 217 Pac. 635, 636. Nevertheless, the case went to trial as if issue had been joined on the claim for salary.

On the trial Swisshelm admitted that it owed Farwell $951.50, and proved, as a set-off to his claim for wages, that he had received from the smelter $1,904.27 from the sale of the four carloads of ore in question. Strange to say, the intervener did not plead the set-off. Proof thereof was admitted apparently upon the theory that it was admissible under the attempted denial of the reply. The court held that a watchman's salary counted for assessment work; that Swisshelm's claims were not subject to relocation; quieted title in Swisshelm, and dismissed plaintiff's claim for wages.

In its findings of fact, the Cochise County court found, among other things:

1. That Swisshelm had paid Farwell $6,788.50 for work and labor,

"leaving a balance owing plaintiff on said work and labor. That while said balance was unpaid, plaintiff shipped and sold ores and minerals from said property which were owned by and belonged to intervener and plaintiff received therefrom more than sufficient money to cover said balance due him."

2. That Farwell had "allowed and permitted certain valuable property to be taken from said mining claims, to-wit: An Air compressor, air receiver, a cable and much other valuable property;".

3. "That the plaintiff included in this action and as a part thereof his cross complaint against the intervener asking judgment against intervener for the sum of $3,755.25 for a balance due him as watchman and for labor performed on and in connection with said mining claims. The court finds that the said sum of $3,755.25 is much more than the actual and true amount of the balance for said services and that the true balance has been fully paid, settled and satisfied from the proceeds of ores and minerals, belonging to intervener, shipped and sold from said mining claims by plaintiff."

The written judgment that was entered did not specifically follow these findings of fact. The only reference in the judgment thereto appears as follows:

"Third: That plaintiff has been fully paid for all and any work or labor performed for intervener as watchman and laborer on said mining claims or in connection therewith and it is hereby Ordered, Adjudged and Decreed that plaintiff's cross-complaint be and the same is hereby dismissed, and plaintiff shall take nothing thereby.

"Fourth: It is further hereby Ordered and Decreed that intervener, Swisshelm Gold-Silver Company, a corporation, is now, and was at all times set out in the pleadings in this action the owner and entitled to

the possession of the property taken off the said mining claims, that is: an air compressor, an air receiver, a cable and other property, taken while plaintiff was employed as watchman of said property by intervener, and it is hereby Ordered, Adjudged and Decreed that plaintiff return said property, so taken, to said owner or pay the reasonable value thereof, at the time of the taking, within ten days of the date hereof.''

In the trial of the instant case, it developed that the sum of $1,904.27 paid by the smelting company to Farwell represented the net proceeds after deduction of freight charges. The freight charges amounted to $363.43, which sum the smelter company had advanced and paid to the railroad company. The actual value of the four carloads of ore at El Paso was $2,267.70. The trial court permitted an amendment to the complaint and prayer so that the final demand was for $2,267.70. The Pima County Court found that the judgment in the Cochise County case was not *res judicata* of the issues in the present case. The court concluded that

''The Findings of Fact in the Cochise County case do not show conclusively the amount Swisshelm owed Farwell, but merely states that he was paid sufficient to satisfy his (Farwell's) claim against Swisshelm.''

The trial court (Pima County) concluded that Swisshelm at the time the Cochise County case was tried was indebted to Farwell in the sum of $951.50 on account of wages, and no more. The court's order for judgment reads as follows:

''It is ordered that judgment be entered in favor of the plaintiff for the full value of the ore, $2,267.70, less $951.50 paid Farwell for which plaintiff received benefits, or a total of $1,316.20, plus costs.''

Appellant's assignment of error reads as follows:

''The Court erred in holding that the balance found by the Cochise County Court to be due Farwell from Swisshelm was $951.50, for the reason that the rec-

ord of the Cochise County Court shows that said balance was $1,904.27.''

Its proposition of law in support of this assignment reads as follows:

''The findings of fact, conclusions of law and judgment of the Cochise County Court were conclusive on the plaintiff, and proved that it had been paid for the full value of the four carloads of ore.''

We are of the opinion that the Cochise County court held that the $1,904.27 received by Farwell balanced the account. The specific finding of the Cochise County court was:

'' . . . the court finds that the said sum of $3,755.25 is much more than the actual and true amount of the balance for said services and that the true balance has been fully paid, settled and satisfied from the proceeds of ores and minerals, belonging to intervener, shipped and sold from said mining claims by plaintiff.''

Judgment was entered accordingly, which is binding on the parties to that action, including the intervener Swisshelm, tne plaintiff in the present case. In the Cochise County case, Farwell was claiming $3,775.25 for back wages. Swisshelm defended on the ground that Farwell then had in his possession for its use and benefit the sum of $1,904.27, the net value of the ore taken from Swisshelm's property. In adopting this position, Swisshelm may be said to have waived the tort. By so doing it approved of the sale and ratified the payment by the smelting company (appellant) to Farwell.

At the trial of the Cochise County case, appellee apparently was cognizant of the following rule as set forth in the case of *Felder* v. *Reeth,* 9 Cir., 34 Fed. (2d) 744, 746, 97 A. L. R. 244:

'' . . . In a case where the owner waives the tort if he accepts the tort-feasor as his agent both in the

taking and in the sale, he would necessarily be limited in his recovery to the money received by the agent. There seems, however, to be no good reason why the owner cannot waive the tortious taking and ignore the subsequent sale and recover the reasonable value of the property taken as for goods sold and delivered. [Citing cases.] . . . ''

The additional applicable rules of law are set forth in this Felder case as follows:

''If on the trial it appears that there is no market at the point of conversion or implied sale, as from the findings appears to be the case, the value must be determined at the nearest market less the costs of transportation thereto, 8 R. C. L. 489, § 49; *Watt* v. *Nevada Cent. Ry. Co.*, 23 Nev. 154, 44 Pac. 423, 46 Pac. 52, 726, 62 Am. St. Rep. 772, for in case of a waiver of a tort in conversion the action *ex contractu* is sustained rather on the theory of benefit derived by the taker than of damage to the owner, *Huganir* v. *Cotter*, 102 Wis. 323, 78 N. W. 423, 72 Am. St. Rep. 884; *National Trust Co.* v. *Gleason*, 77 N. Y. 400, 33 Am. Rep. 632; Keener, Quasi Cont. 200; Woodward on the Law of Quasi Contracts, § 292. See, also, 1 C. J. 1040, § 169; 2 R. C. L. 761, § 20.''

We believe that this foregoing statement of the rule limiting the amount of the recovery was applicable at the time the case was tried in Cochise County. The appellee at that time must have been so convinced, for it did not attempt to recover from Farwell the gross purchase price of the ore, but rather contented itself in its set-off with the net value of the ore which was available after transportation costs had been paid.

When property has been converted and sold the owner thereof may either acquiesce in the conversion and sue in assumpsit, or refuse to acquiesce therein and ask for damages for the conversion. 1 C. J. 1033; 1 C. J. S., Actions, § 50. *Anderson* v. *Thude*, 42 Ariz. 271, 25 Pac. (2d) 272. The following

definitions of setoff are set forth in 47 Am. Jur., Setoff and Counterclaim, sec. 3, p. 709:

" . . . In its broadest sense, setoff is the discharge or reduction of one demand by an opposite one, and it has frequently been defined as a cross claim, for which an action might be maintained against the plaintiff. Other definitions of setoff are that it is a counterclaim which a defendant may interpose by way of cross action against the. plaintiff; an independent demand of a defendant made to counterbalance that of the plaintiff in whole or in part; . . . "

It is thus apparent that in the Cochise County case Swisshelm waived the tort and proceeded in *assumpsit* by way of setoff to recover the $1,904.27. It was successful in prosecuting this claim in that it counterbalanced the claim of plaintiff for $3,775.25. The only effect that can be given to the Cochise County judgment is that the court there found that plaintiff's demand for wages was rightfully in the sum of $1,904.27 and was set off by the intervener's demand. That judgment was assented to by appellee and it became bound thereby. We conclude that the Pima County court was without authority to review this judgment and to try again the issues that had been finally concluded therein.

The judgment of the lower court is reversed, with instructions to enter judgment for the defendant below.

STANFORD, C. J., and MORGAN, J., concur.